701 A.2d 979

IN MATTER OF PAULINE MASON, AN
ALLEGED INCOMPETENT.

Superior Court of New Jersey
Chancery Division
Essex County
Probate Part

Decided June 13, 1997.

*Robert A. Vort*, for Edith Applebaum, co-guardian.

*Jay M. Silberner*, for Rosemary Aikens, co-guardian.

*Karimu F. Hill–Harvey*, for Pauline Mason, alleged incompetent.

ROSEMARY HIGGINS CASS, J.S.C. (Ch. Div. temporarily assigned).

A motion was filed with the court by Edith Applebaum (Applebaum), the co-guardian of Pauline Mason, an adjudicated incompe-

tent, (Mason), for the discharge of the court-appointed attorney for Mason, Karimu Hill–Harvey (Hill–Harvey). It is Applebaum's contention that, once guardians of an incompetent are appointed, there is no further need for a court-appointed attorney and indeed no authority in the court to permit the continuance of such person as attorney for an incompetent.

A brief recital of the procedural history of this case is pertinent. Upon the filing of a complaint by Mountainside Hospital seeking a declaration of incompetency of Mason this court by order dated February 1, 1996, appointed a social worker connected with the hospital, Rosemary Aikens (Aikens) as temporary guardian and Hill–Harvey the court-appointed attorney pursuant to *R.* 4:86–4(b). In the absence at the time of any family members, Aikens and Hill–Harvey did an extraordinary job in marshalling the alleged incompetent's assets, sorting papers, letters and the conglomeration of personal belongings in a house reminiscent of the Collier brothers. Hill–Harvey was instrumental in arranging for its sale and the sale of those personal belongings which Mason's sisters did not want, as also setting up an investment advisory account with First Union National Bank.

Upon notification to the two living sisters, Applebaum in Florida, and Fredericka Ingham (Ingham) in California, these ladies entered an appearance and indicated their desire to be appointed guardians of their sister who was now living in Green Hills, an exclusive residential care facility in West Orange. Nevertheless, because both sisters lived so far away and because of Mason's frail health[1], on the date of final hearing, it was agreed that the two sisters and Aikens would serve as co-guardians of the person and property of Mason, but with final authority in Aikens, after consultation with the sisters, to make medical decisions for Mason.

---

[1] Besides her dementia she has suffered from time to time with psychotic episodes necessitating her placement for a brief period in Charter Behavioral Center, until her condition was stabilized.

Unfortunately, following the hearing the sisters each returned to her home without consulting Aikens and/or Hill–Harvey regarding Mason's financial affairs. As the major part of the assets, close to one million dollars, had been placed in the investment account with the First Union National Bank, Hill–Harvey, on consultations with the sisters' attorney, Gary Campbell (Campbell) continued to oversee the receipts and disbursements on Mason's behalf.

In the fall of 1996 several events transpired. Ingham, the one co-guardian died suddenly on October 6, 1996. At the same period of time, Aikens requested the attorney, Campbell, who was now serving as attorney for all the guardians to make application to the court for additional commissions for her expert services and the extraordinary amount of work she had done as temporary guardian. Where it appeared at first that Applebaum was in acquiescence to the request, she withdrew her consent, necessitating a withdrawal of Campbell as attorney because of the conflict between the now two remaining co-guardians. Each co-guardian then retained new counsel and present counsel for Applebaum filed the motion before this court.

Meanwhile, after her sister's death, Applebaum sued the Estate of Ingham in California, seeking to prevent the probate of either of two wills. As Mason was named in the earlier will, service was made upon her at Green Hills. Hill–Harvey, on Mason's behalf protested the service upon the incompetent and requested further documentation be served on Hill–Harvey.

Because of the objections raised by Applebaum to the commissions requested by Aikens and also to various expenditures she had made, as well as allegations of self-dealing by Hill–Harvey in using her own staff people in connection with the cleaning of the house, a plenary hearing took place before this court on February 6, 1997, after which the court awarded Aikens reasonable commissions, found her expenditures totally warranted and that Hill–Harvey's use of staff was appropriate. Reserved was the question

of whether Hill–Harvey should be discharged or had any role to fulfill since the guardians had been appointed.

It is Applebaum's contention that any services rendered by Hill–Harvey subsequent to the date of the judgment, July 19, 1996, are redundant since she and Aikens, as co-guardians, represent the interests of Mason and legal advice can be obtained from their two attorneys. Moreover, Hill–Harvey is not needed to perform the routine administrative and clerical tasks of the guardians in dealing with the incompetent's assets.

Hill–Harvey, in seeking instructions from the court as to whether she should be exercising any continuing role on behalf of her client, Pauline Mason, expressed her concern about Mason's agitated state when family members were mentioned, her unwillingness to have her sisters visit her and her lack of knowledge that Applebaum was appointed one of her guardians [2] or that Ingham had died. It is her contention that she was appointed by the court to represent the legal interests of Mason and to act only in her best interest until such time as the court terminates her appointment.

New Jersey statutes do not require the appointment of an attorney to represent the interests of an alleged incompetent. However, in conformity with modern concerns for due process to an alleged incompetent,[3] *N.J. Court Rule* 4:86–4(b) requires the court to appoint counsel for alleged incompetent persons in incompetency hearings. That Rule provides:

(b) Appointment and Duties of Counsel. The order shall include the appointment by·the court of counsel for the alleged incompetent. Counsel shall 1) personally interview the alleged incompetent; 2) make inquiry of persons having knowledge of the alleged incompetent's circumstances, his or her physical and mental state and his or her property; 3) make reasonable inquiry to locate any will, powers of attorney, or health care directives previously executed by the alleged incompetent

---

[2] Applebaum admitted on the witness stand at the plenary hearing in February 1997, that she had not seen her sister in eight years.

[3] *See e.g.,* Commission on National Probate Court Standards, *National Probate Court Standards,* 59 (1993). *Matter of M.R.,* 135 *N.J.* 155, 638 *A.*2d 1274 (1994).

or to discover any interests the alleged incompetent may have as beneficiary of a will or trust. At least three days prior to the hearing date counsel shall file a report with the court and serve a copy thereof on plaintiff's attorney and other parties who have formally appeared in the matter. The report shall contain the information developed by counsel's inquiry; make recommendations concerning the court's determination on the issue of incompetency including the suitability of less restrictive alternatives such as a conservatorship or limited guardianship; and state whether the alleged incompetent has expressed dispositional preferences and, if so, counsel shall argue for their inclusion in the judgment of the court. If the alleged incompetent obtains other counsel, such counsel shall notify the court and appointed counsel at least five days prior to the hearing date.

■ The court-appointed attorney in an incompetency matter represents the client's wishes as an attorney would represent a client in any particular legal dispute. The individual, the subject of the incompetency hearing, has rights, preferences and desires that are not wholly usurped because of the action concerning his or her alleged incompetency. Moreover:

[a]ttorneys should also be mindful of the fact that a declaration of incompetency need not necessarily deprive a person of the right to make all decisions. The primary duty of the attorney for such a person is to protect his or her rights, including the right to make decisions on specific matters. The attorney must therefore, advocate for decisions made by such persons unless the decisions are patently absurd or pose an undue risk of harm.

[Supreme Court's Judiciary–Surrogates Liaison Committee, *Guidelines for Court–Appointed Attorneys in Incompetency Matters,* 1 (1995).]

Further, the *Rules of Professional Conduct* (RPC) mandate that an attorney representing a disabled person should maintain, as much as possible, "a normal attorney-client relationship" with that person. *R.P.C.* 1.14(a) provides:

a) When a client's ability to make adequately considered decisions in connection with the representation is impaired, whether because of minority, mental disability or for some other reason, the lawyer shall, as far as reasonably possible, maintain a normal client-lawyer relationship with the client.

[*R.P.C.* 1.14(a).]

The role of the court-appointed attorney is thus the traditional attorney role. Indeed, as stated by the Judiciary Surrogates Liaison Committee, "[t]he representative attorney is a zealous advocate for the wishes of the client." Supreme Court's Judiciary–Surrogates Liaison Committee, *Id.* at 7 (1995).

Perhaps the only limitation placed upon such representation is that the attorney advocate on behalf of the client "unless the decisions are patently absurd or pose an undue risk of harm." *Id.* Should such a circumstance arise, the court-appointed attorney "may ... [o]n perceiving a conflict between the preferences of such persons and their best interests ... wish to inform the court of possible need for a guardian ad litem." *Id.*

The distinction between the role of a guardian ad litem and that of a court-appointed attorney is clear. By Supreme Court mandate, to help define these respective roles in the context of family law practice, the Supreme Court's Family Division Practice Committee addressed the matter in its 1987–1988 Annual Report. That *Report* on *Rule* 5:8A, *Appointment of Counsel for Child,* and *Rule R.* 5:8B, *Appointment of Guardian Ad Litem,* now the *Official Comment to those Rules,* provides in relevant part:

> The purpose of Rules 5:8A and 5:8B is to eliminate the confusion between the role of a court-appointed counsel for a child and that of a court-appointed guardian ad litem (GAL). The Supreme Court's Family Division Practice Committee in its 1987–1998 Annual Report distinguishes the roles. A court-appointed counsel's services are to the child. Counsel acts as an independent legal advocate for the best interests of the child and takes an active part ... If the purpose of the appointment is for legal advocacy, then counsel would be appointed. A court-appointed guardian ad litem's services are to the court on behalf of the child. The GAL acts as an independent fact finder, investigator and evaluator as to what furthers the best interests of the child ... The GAL can be an attorney, a social worker, a mental health professional or other appropriate person.
>
> [Family Division Practice Committee, *Report,* 3 *N.J.L.* 36, (1994) *reprinted in Official Comment for Rules* 5:8A and 5:8B.]

The "roles" and purposes of the court-appointed attorney and the GAL are thus separate and discrete. Although the report considers these roles in the context of the Family Part, the respective positions serve the same function in the Probate Part in the context of competency matters. Following the decision in *Matter of M.R.,* 135 *N.J.* 155, 638 *A.2d* 1274 (1994), *Rule* 4:86–4 was comprehensively revised in 1996 and in part now distinguishes the role of the guardian ad litem from that of the court-appointed

attorney.[4]

■ The court-appointed attorney thus acts as an "advocate" for the interests of his client and the GAL acts as the "eyes of the court" to further the "best interests" of the alleged incompetent. Court-appointed counsel is an independent legal advocate for the alleged incompetent and takes an active part in the hearings and proceedings, while the GAL is an independent fact finder and an investigator for the court. The court-appointed attorney, subject to the aforementioned concerns, thus subjectively represents the client's intentions, while the GAL objectively evaluates the best interests of the alleged incompetent.

In the present matter, in its "Order for Hearing and Appointment of a Temporary Guardian" entered February 7, 1996, this court appointed Hill–Harvey, Esq. as counsel for Mason in the incompetency proceeding commenced by Mountainside Hospital. Her duties are thus those as described in New Jersey Court *Rule* 4:86–4(b) as a court-appointed attorney. They involved the collection of information about Mason and asserting to the court her wishes, desires and preferences as she could best interpret them. Hill–Harvey's obligation was to act as a "zealous advocate" of those perceived interests of Mason, mindful that such representation requires a duty of care and a level of discretion placed upon an attorney representing an alleged incompetent under *Rule* 4:86–4(b) and *R.P.C.* 1.14(b).

When does the responsibility of a court-appointed attorney terminate? Nothing in the present *Rule*, (*R.* 4:86–4) defines a termination date, though the awarding of compensation is set forth in *Rule* 4:86–4(e). By contrast *Rule* 5:8B, which addresses the

---

[4] *Rule* 4:86–4(d) reads as follows:

(d) Guardian ad Litem. At any time prior to entry of judgment, where special circumstances come to the attention of the court by formal motion or otherwise, a guardian ad litem, may in addition to counsel, be appointed to evaluate the best interests of the alleged incompetent and to present that evaluation to the court.

guardian ad litem, provides for termination of the GAL's responsibility at the conclusion of the matter for which appointed, *unless continued by the Court*. *Rule* 5:8A speaks of the right of the court-appointed attorney to receive a fee either on an interim basis or at the conclusion of the case.

However, one could look to *Rule* 1:11–3 dealing with termination of responsibility in the trial court. It reads in pertinent part: "The responsibility of an attorney of record in any trial court with respect to the further conduct of the proceedings shall terminate upon the expiration of the time for appeal from the final judgment or order entered therein." *Rule* 1:11–3.[5] Nevertheless, where counsel has been appointed by the court, representation may be continued at the discretion of the court in exercise of its parens patriae jurisdiction.

By way of custom, it has been the practice in this court that when significant events occur which would impact the incompetent—e.g., sale of the incompetent's house, gifts to persons who would be natural recipients of the incompetent's bounty, removal of the incompetent from the state, or a formal accounting, notice is given by the attorney for the guardian to the court-appointed attorney, who then may briefly report to the court on behalf of the incompetent.

The court possesses and retains broad powers and maintains far-reaching discretion in guardianship appointments and the oversight of incompetency matters. *N.J.S.A.* 3B:12–36 entitled, *Authority of court with respect to ward's person and estate*, states:

> If a guardian has been appointed as to the person of a minor or mentally incompetent person, the court shall have a *full authority* over the ward's person and all matters relating thereto; and if a guardian has been appointed as to the

---

[5] Commentary to this Rule indicates it was adopted particularly to deal with matrimonial matters where one attorney would attempt to serve papers on the attorney who had represented a litigant long before and who was no longer representing that party.

estate of a minor or mentally incompetent person, the court shall have *full authority* over the ward's estate, and all matters relating thereto.

[*N.J.S.A.* 3B:12–36 (emphasis added).]

Additionally, *N.J.S.A.* 3B:12–49, entitled *Powers conferred upon the court*, states in relevant part:

The court has, for the benefit of the ward, his dependents and members of his household, all the powers over his estate and affairs which he could exercise, if present and not under disability, except the power to make a will, and may confer those powers upon a *guardian of his estate*.

Further, the court's power in this regard clearly does not terminate with the appointment of a guardian. *N.J.S.A.* 3B:12–37, entitled *Authority of court to limit or relieve limitations placed upon powers of guardian; letters of guardianship*, states:

The court may, at time of appointment or later, limit the powers conferred upon a guardian, or previously conferred by the court, and may at any time relieve him of any limitation. If the court limits any power conferred on the guardian, the limitation shall be stated in certificates of letters of guardianship thereafter issued.

[*N.J.S.A.* 3B:12–37.]

The court's discretion and control in these matters is thus broad and far-reaching. Although the court grants the guardians appointed in a given matter a significant degree of power and privilege to act on behalf of the adjudicated incompetent, the court retains a great deal of oversight and control as to how the guardians proceed. The court is indeed the final arbiter in these matters.

 As the court said *In the Matter of Trott*, 118 *N.J.Super.* 436, 288 *A*.2d 303 (Ch.Div.1972), "[u]nder the doctrine of parens patriae the court, as representative of the sovereign, may intervene in the management and administration of an incompetent's estate in a given case for the benefit of the incompetent or of his estate." *Id.* at 440, 288 *A*.2d 303. Furthermore, in the landmark case of *In re Quinlan*, the New Jersey Supreme Court stated:

As part of the inherent power of equity, a Court of Equity has full and complete jurisdiction over the persons of those who labor under any legal disability ... The Court's action in such case is not limited by any narrow bounds, but it is empowered to stretch forth its arm in whatever direction its aid and protection may be needed.

[*In re Quinlan*, 70 *N.J.* 10, 44–45, 355 *A*.2d 647 (1976).]

It is thus not unreasonable or an action beyond the scope of the court's inherent power, as well as the powers granted by statute and by the doctrine of parens patriae, for the court to continue the appointment of Hill–Harvey in the present matter, should it deem it wise to do so. The court's far-reaching authority and discretion in these matters is evident.

From a review of the actions of Hill–Harvey after the judgment of incompetency, which are being complained of, it is apparent that she did not understand the limitations on her role once the co-guardians were appointed. They indeed, either directly or through their attorney, Campbell, should have taken charge of the financial affairs of Mason and Hill–Harvey's duty was only to turn over the various records to them or counsel. However, in view of the fact that they chose not to meet with Hill–Harvey at the time of their appointment and considering the events in the fall of 1996 previously detailed, it is also apparent that Hill–Harvey, acting in good faith, saw herself as representing her client's interests, particularly after the death of Ingham and the filing of suit against Ingham's estate by Applebaum, as well as when conflict arose between the two remaining co-guardians.

Moreover, the revision of *Rule* 4:86 which clarified the distinction between the duties of a court-appointed attorney and a guardian ad litem only came into effect as of September 1996, in the aftermath of the leading case of *Matter of M.R.*, 135 *N.J.* 155, 638 *A.*2d 1274 (1994) which, drawing on reports of both the Judiciary–Surrogate's Liaison Committee and the Civil Practice Committee, set forth the criteria to guide the activities of a court-appointed attorney and the somewhat differing responsibilities of a guardian ad litem. *Id.* at 177–178, 638 *A.*2d 1274.

The Court in *M.R.* pointed out that the court appointed attorney's role is not to determine whether the client is competent to make a decision, but to advocate the decision that the client makes. *Id.* at 176, 638 *A.*2d 1274. Earlier in the decision the Court, relying on the clear public policy of this state to respect the rights of self-determination of all persons stated:

Unless they endanger themselves or others, competent people ordinarily can choose what they want, even if their choices are irrational or dangerous. Traditionally, however, courts have tempered the right of self-determination of incompetent people with concerns for their best interests. The paradox with incompetent people is to preserve as much as possible their right of self-determination while discharging the judicial responsibility to protect their best interests.

[*Id.* at 167, 638 *A.*2d 1274.]

Thus, there are situations which may arise where the wishes of a guardian are at variance with those of the guardian's ward. Who then speaks for the latter except a court appointed attorney? Mindful of the strictures of *M.R.*, the court in the exercise of its parens patriae jurisdiction may continue a court appointed attorney to serve as the need arises. This does not mean in the present case Hill–Harvey should be apprised of every communication between counsel for the two co-guardians, nor that she should continue functioning vis-a-vis the bank, nor, since the court has previously ruled that counsel for co-guardian Aikens shall accept service for Mason in the California litigation, should she involve herself therein. While there are conflicts between the co-guardians in certain regards, it appears that at present the financial issues have been resolved.

Hill–Harvey, at this time, has a limited "stand-by" role to play. Counsel for the two co-guardians, or either of them, shall notice her in the event of significant events impacting on the adjudicated incompetent so that her wishes may be advocated to the court by her court-appointed attorney and in keeping with the strong public policy enunciated in *Matter of M.R.* to preserve as much as possible her self-determination.

For all the reasons hereinabove stated Karimu Hill–Harvey shall remain the court-appointed attorney for Pauline Mason, adjudicated incompetent. The motion of co-guardian, Edith Applebaum, to discharge Karimu Hill–Harvey, is denied.