# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2782-21

IN THE MATTER OF
A.H.

_____

Submitted October 18, 2023 – Decided November 28, 2023

Before Judges Currier and Susswein.

On appeal from the Superior Court of New Jersey, Chancery Division, Monmouth County, Docket No. P-000128-21.

Dilworth Paxson, LLP, attorneys for appellant (Kristen L. Behrens, of counsel and on the briefs; Sarah Gremminger, on the brief).

B.M., respondent, has not filed a brief.

PER CURIAM

A.H.[1] appeals from a Chancery Division judgment of limited incapacity

and appointment of a guardian to act on her behalf in divorce litigation with her

_____

[1] We use initials to protect the privacy interests of the parties.  R. 1:38-3(a)(2).

estranged husband, T.H.[2]  After carefully reviewing the record in light of the governing legal principles and the deference we owe to the trial court's credibility findings, we affirm.

I.

We discern the following pertinent facts from the evidence presented at the competency trial.  A.H. and T.H. were married in New Jersey on June 6, 1987.  They have three children together, all of whom are now adults.  A.H. originally filed a complaint for divorce in June 2012.  The divorce action was dismissed by a consent order entered in January 2017.

A.H. and T.H. have dual citizenship in the United States and Cyprus.  T.H. also filed for divorce in Cyprus.  A divorce decree was entered by the Nicosia Family Court on July 18, 2018.  The Cyprus divorce decree did not address support issues or the distribution of assets.  T.H. filed a request to register the foreign judgment in New Jersey.  A.H. objected.  Accordingly, T.H. and A.H. remained legally married in this State.

In September 2018, A.H. filed a new complaint for divorce.  Those proceedings stalled.  Concerns arose regarding A.H.'s capacity to manage her affairs.  In October 2019, the Family Part judge issued an order appointing

---

[2]  T.H. filed a motion to intervene in this appeal, which was denied.

Bettina Munson, Esq. as guardian ad litem for A.H. "to serve as an independent investigator, fact finder and evaluator to report back to the [c]ourt as to whether [A.H.] lacks sufficient mental capacity needed to conduct the litigation." The judge also ordered A.H. to undergo a mental evaluation.

On January 6, 2021, Munson submitted a report to the court, recommending that an action for guardianship be initiated under Rule 4:86. On February 8, 2021, the Family Part judge issued an order directing the filing of an application for guardianship of A.H.

On April 8, 2021, Munson filed a complaint for guardianship in the Chancery Division. She submitted certifications of two doctors—Steven Dyckman, M.D. and Julie Davelman, Psy.D. A.H. opposed the petition, submitting a certification of a third doctor—Beverlee A. Tegeder, Psy.D.

On August 27, 2021, the Chancery Division judge held a preliminary hearing and appointed Suzana Hot as designated trial counsel for A.H. The guardianship hearing spanned three non-consecutive days between October 2021 and February 2022. The court heard testimony from Munson, Dr. Dyckman, Dr. Davelman, Dr. Tegeder, T.H., and A.H.[3]

---

[3] A.H.'s counsel requested A.H. be permitted to participate virtually in the competency hearing. The judge denied that request, citing the presumption that

A-2782-21

Munson testified that when they "had a general discussion of life in general [A.H.] did pretty well," but when their conversations involved the divorce and related issues, A.H. "would become anxious." Munson specifically mentioned a January 2020 court date where A.H. was "physically shaking. Her appearance was quite disheveled. You know, she just became so nervous and so anxious about being there."

Munson testified that A.H. expressed that going to court caused her to be so anxious and nervous that she would have a panic attack and needed to take medication. A.H. also reported to Munson that she could not handle making decisions about her case and she became very nervous and easily upset in discussing the divorce. A.H. further told Munson that she did not feel that she would be able to help her attorney with any of the court proceedings or participate in any type of litigation.

Dr. Dyckman, the only psychiatrist to testify, diagnosed A.H. with post-traumatic stress disorder and major depressive disorder. He also questioned whether she had bipolar disorder. During his evaluations of A.H., Dr. Dyckman observed that she was "extremely anxious." He testified that A.H. had "a

---

competency hearings should be conducted in person and noting the need for the court to observe how A.H. would act during a court appearance.

number of bad experiences in court in the past and she was extremely fearful of her husband." Further, A.H. "was extremely depressed and anxious and stressed about having to come to court to testify." He continued, explaining A.H. "felt that she had been tricked in the past into saying things that she didn't realize she was saying and she was very concerned that that would happen again." Dr. Dyckman opined that these issues would "definitely have a great impact on her ability to participate [in divorce proceedings] in a rational way." He also opined that A.H. was unable to assist her attorney in connection with her divorce proceedings and participate meaningfully.

Dr. Davelman testified her evaluation of A.H. "reflected that she had a high level of anxiety and depression, she had difficulty with assessing situations, and conveying and asserting her wishes when she's stressed." She diagnosed A.H. with severe major depressive disorder and panic disorder. She did not find any indicators of bipolar disorder. She noted that A.H.'s anxiety was triggered by being in the same place as T.H. and having to discuss the divorce proceedings in general. Dr. Davelman further testified that A.H. said "there were times where she felt like she wasn't able to understand what was going on in the court and that she was losing focus and having a hard time processing what was happening." Although A.H. "didn't want to give up the chance to make

5

decisions, [she] also felt like she would have a hard time doing so." However, Dr. Davelman also opined that it was possible for A.H.'s condition to improve.

T.H. testified regarding his observations of A.H.'s mental health over the course of their marriage. He detailed issues that arose during the divorce litigation and noted A.H.'s "obstructive" behavior.

T.H. described an incident where A.H. sent a text to someone suggestive of suicidal intent, prompting a mobile crisis team to respond to their home. He also detailed incidents where A.H. would stop taking her medication, and become verbally abusive toward family members and friends.

Dr. Tegeder testified that based on her evaluation of A.H., she found her to be mentally competent. She stated A.H. "has a full understanding of the proceedings regarding her divorce proceeding, . . . [and that] she does have the capacity to comprehend and understand the proceedings." She determined A.H. suffers from moderate depression. Dr. Tegeder explained A.H. is "in treatment. She's on medication, but it's not to the extent that it's impairing her ability to make decisions."

Dr. Tegeder acknowledged she only reviewed medical records from A.H.'s treating psychiatrist, Dr. Bransfield. Cross-examination revealed that Dr.

6

Tegeder was not aware of many facts that might have impacted her opinion as to A.H.'s capacity to participate in the divorce proceeding.

A.H. testified she was "capable of understanding, comprehending what's going on in the court and [is] able to defend [her]self." She said she had an excellent relationship with her current matrimonial lawyer. She felt confident she could work with her in reference to the divorce action. On cross-examination, she acknowledged that in 2014 Dr. Bransfield opined she was not competent to sign legal agreements regarding the divorce proceeding, was unable to maintain adequate judgment and advocate for herself, and was not competent to represent herself pro se. A.H. refused to acknowledge the facts stated in a previous court opinion, insisting the judge's opinion was "misprinted."

On March 31, 2022, the Chancery Division judge issued a judgment of limited incapacity and appointment of guardian, appointing a lawyer to serve as limited guardian to act on A.H.'s behalf in the divorce action. The judge found "by clear and convincing evidence [A.H.] is in need of a limited [g]uardian for the purpose of the prosecution and defense of the pending [m]atrimonial action." The judge explained "that the stress of the proceedings result in [A.H.] not being

A-2782-21

capable of making rational decisions to protect her interests and she is incapacitated when dealing with the [m]atrimonial proceedings."

The judge further explained that the need for a competency evaluation arose from the long pending divorce litigation, which was the subject of multiple proceedings and more than fifty orders. The judge found A.H.'s actions had stymied the proceedings. Moreover, A.H. had a longstanding history of mental health treatment and she had a "significant" amount of prescribed medications.

The judge highlighted the substantial disagreement between the parties' experts. Dr. Tegeder opined that A.H. was doing better mentally than she had been in the past, was capable of making her own decisions, and was not in need of guardianship. The judge discounted Dr. Tegeder's testimony, reasoning that she did not perform as thorough a review as did Dr. Dyckman.

The judge found Dr. Dyckman to be the most credible and reliable expert witness. The judge credited Dr. Dyckman's thorough review of A.H.'s psychiatric history and determined his analysis was most consistent with the facts as testified to by the parties.

The judge found T.H. to be a credible witness but acknowledged the "extremely strained relationship" between the spouses. He explained T.H. harbors resentment over how long the divorce litigation has lasted and attributes

8

that delay and his financial problems to A.H. Nonetheless, the judge found T.H. provided clear, credible testimony as to the problems A.H. experienced during the marriage and the divorce litigation.

The judge determined A.H. was the most important witness. The judge observed her throughout her testimony and reviewed evidence of A.H. being physically incapable of proceeding with hearings and the matrimonial litigation. The judge acknowledged A.H. appeared to be in control of herself in the courtroom. He did not observe A.H. shaking uncontrollably or in any inappropriate manner. The judge further noted that A.H. performed well while testifying on direct examination.

The judge described a change in A.H.'s behavior during her cross-examination. The judge found that when cross-examination touched on a sensitive topic, A.H. was not completely in control of her response or reactions to questions. The judge further found that her thought process was not rational, that she became increasingly disturbed over the course of cross-examination and lashed out with inappropriate and defensive responses.

Based on those observations, the judge was "absolutely convinced" that A.H. needed a limited guardian to help her make decisions involving the divorce action and to protect her interests and wellbeing. The written order appointing

9

a guardian was entered on March 31, 2022. On April 1, 2022, the judge issued an amended order substituting a different guardian from the one named in the March 31 order. That April 1 order further provided that "[a]ll other items in the [March 31, 2022] [j]udgment remain in effect."

This appeal follows. After it was discovered that A.H. had not ordered a transcript of the trial court's March 30, 2022 oral opinion, on our own motion, we ordered A.H. to provide a transcript of the oral opinion and to file a supplemental brief.

A.H. raises the following contentions for our consideration in her initial and supplemental briefs: (1) the trial court erred as a matter of law in failing to apply the clear and convincing standard to evidence presented as to her alleged incapacity; (2) the trial court erred in failing to order updated medical evaluations; (3) the trial court erred in allowing T.H. to file an answer and testify at the guardianship hearing; (4) the trial court erred in finding A.H. needs a guardian with respect to the divorce action; and (5) the trial court erred by failing to order reasonable accommodations or less restrictive alternatives to guardianship.

III.

10

We begin our analysis by acknowledging the legal principles and procedural safeguards governing this appeal. We review the Chancery Division judge's determination for an abuse of discretion. See In re Est. of Hope, 390 N.J. Super. 533, 541 (App. Div. 2007) ("Remedies available to courts of equity 'are broad and adaptable.'") (quoting In re Mossavi, 334 N.J. Super. 112,121 (Ch. Div. 2000)); see also Wolosoff v. CSI Liquidating Tr., 205 N.J. Super. 349, 360 (App. Div. 1985). "The exercise of . . . discretion will be interfered with by an appellate tribunal only when the action of the trial court constitutes a clear abuse of that discretion." Salitan v. Magnus, 28 N.J. 20, 26 (1958). A trial court decision will only constitute an abuse of discretion where "the 'decision [was] made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" U.S. ex rel. U.S. Dep't of Agric. v. Scurry, 193 N.J. 492, 504 (2008) (alteration in original) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

We will not disturb a guardianship appointment pursuant to the guardian statute, N.J.S.A. 3B:12-24 to -29, in the absence of the mistaken exercise of the considerable discretion vested in the judge. See In re Queiro, 374 N.J. Super. 299, 311 (App. Div. 2005); see also In re Quinlan, 70 N.J. 10, 53-55 (1976). Nonetheless, challenges to legal conclusions as well as a trial judge's

11

interpretation of the law are subject to de novo review.  Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 382–83 (2010).

The legal authority to appoint a guardian for an incapacitated person is "derive[d] from the inherent equitable authority of the sovereign to protect those persons within the state who cannot protect themselves because of an innate legal disability."  In re Grady, 85 N.J. 235, 259 (1981).  "[T]he [S]tate's parens patriae power supports the authority of its courts to allow decisions to be made for an incompetent that serve the incompetent's best interests, even if the person's wishes cannot be clearly established."  In re Conroy, 98 N.J. 321, 364-65 (1985).  A person is incapacitated if she "is impaired by reason of mental illness or intellectual disability to the extent that the individual lacks sufficient capacity to govern [her]self and manage [her] affairs."  N.J.S.A. 3B:1-2.

Rule 4:26-2(a) provides that a mentally incapacitated person "shall be represented in an action by the guardian of either the person or the property." When a mentally incapacitated person is not represented by a guardian, paragraph (a) authorizes the court to appoint "a guardian ad litem . . . in accordance with paragraph (b) of this rule."  R. 4:26-2(a).

A judicial determination of mental incapacity, however, must precede the appointment of a guardian.  S.T. v. 1515 Broad St., LLC, 241 N.J. 257, 277

A-2782-21

(2020). Rule 4:26-2(b) "sets forth the initial procedure that follows when a person is alleged to be mentally incapacitated." Ibid. "The court may appoint a guardian ad litem for . . . [an] alleged or adjudicated incapacitated person on its own motion," or the motion of others. R. 4:26-2(b)(4). "The word 'alleged' before 'mentally incapacitated' is not surplus language but is central to understanding the guardian ad litem's function at this stage." S.T., 241 N.J. at 277.

"Under Rule 4:26-2(a), a guardian for a 'mentally incapacitated person' is authorized to prosecute a legal action on her behalf." Ibid. "In contrast, the role of a guardian ad litem for an "alleged mentally incapacitated person" under Rule 4:26-2(b) is more limited . . . [.]" Ibid. The commentary to the court rule explains:

> The use of the qualifier "alleged" to the use of the term "mentally incapacitated person" . . . is to make clear that in contradistinction to the appointment of a guardian . . ., which requires an adjudication of mental incapacitation, a guardian ad litem's appointment is dependent only upon the allegation of mental incapacitation. The guardian ad litem's responsibility is to advise the court as to whether a formal competency hearing may be necessary and if so, to represent the alleged mentally incapacitated person at that hearing.
>
> [Id. at 278 (quoting Pressler & Verniero, Current N.J. Court Rules, cmt. 3 on R. 4:26-2 (2020)) (emphasis added).]

13

"Thus, when a guardian ad litem is appointed pursuant to Rule 4:26-2(b) to represent an individual who is 'alleged' to be mentally incapacitated, the guardian ad litem's function is to inquire into the individual's alleged mental incapacity." Ibid. "The role of a guardian ad litem is to act as an independent investigator and inform the court on the subject of the client's mental capacity." Ibid. "In that sense, the guardian ad litem serves 'as "the eyes of the court" to further the [client's] "best interests."'" Ibid. (quoting In re Mason, 305 N.J. Super. 120, 127 (Ch. Div. 1997)). "After completing its inquiry, the guardian ad litem submits a report to the court containing the results of the investigation and recommends whether a formal hearing should proceed under Rule 4:86." Ibid. "The guardian ad litem's recommendations are not binding on the court; ultimately the court must make its own independent factfindings." Id. at 278-79. "The court should not 'cede [its] responsibility and authority' as the decisionmaker to the guardian ad litem." Id. at 279 (quoting P.T. v. M.S., 325 N.J. Super. 193, 216 (App. Div. 1999)).

"Nothing in our court rules, statutes, or case law suggests that a guardian ad litem appointed to investigate a client's alleged mental incapacity has the power to make legal decisions for the client before a judicial determination on her mental capacity." Ibid. "Rigorous procedural safeguards protect the subject

14

of a guardianship hearing because a finding of incapacity results in an individual's loss of the right of self-determination." Id. at 280-81. Accordingly, an action for guardianship of an alleged incapacitated individual and the proceedings required for a judgment of incapacity are governed by court rule and statute. R. 4:86-1 to -8; N.J.S.A. 3B:12-24 to -35.

An action for the appointment of a guardian must comply with Rule 4:86-2. A guardianship complaint must include two affidavits from properly qualified medical professionals, stating their opinions about "the extent to which the alleged incapacitated person is unfit and unable to govern himself or herself and to manage his or her affairs," R. 4:86-2(b)(2)(F), and "the extent to which the alleged incapacitated person retains sufficient capacity to retain the right to manage specific areas, such as . . . legal . . . decisions," R. 4:86-2(b)(2)(G). Notice of the guardianship hearing must be given to the alleged incapacitated person, individuals named by that person in a power of attorney or health care directive, and the person's children. R. 4:86-4(a)(2).

Our Supreme Court recently explained:

> "If the court is satisfied with the sufficiency of the complaint and supporting affidavits and that further proceedings" are necessary, the court must (1) set a date for the hearing, R. 4:86-4(a)(1); (2) give the alleged incapacitated person "at least 20 days' notice" of the hearing, R. 4:86-4(a)(2); and (3) advise the person that

15

> if she opposes the action, "she may appear either in person or by attorney, and may demand a trial by jury," R. 4:86-4(a)(5). "[T]he trial of the issue of incapacity may be had without a jury . . . unless a trial by jury is demanded by the alleged incapacitated person or someone on his behalf." N.J.S.A. 3B:12-24. "[I]f the alleged incapacitated person is not represented by counsel," the court must appoint counsel. R. 4:86-4(a)(7).
>
> [S.T., 241 N.J. at 281.]

Appointed counsel should "interview the alleged incapacitated person," as well as people who are knowledgeable about the person's circumstances, and "make reasonable inquiry to locate any will, powers of attorney, or health care directives previously executed." R. 4:86-4(b)(1). The appointed counsel is also required to file a report and make recommendations to the court. R. 4:86-4(b)(2).

"Unless the alleged incapacitated person requests a jury trial, the court must take 'testimony in open court' and 'determine the issue of incapacity.'" S.T., 241 N.J. at 281 (quoting R. 4:86-6(a)). "A finding of incapacity must be made by clear and convincing evidence." Ibid. "Upon making a finding of incapacity, the court may appoint a general guardian or a limited guardian, depending on whether the individual 'lacks the capacity to do some, but not all, of the tasks necessary to care for himself.'" Id. at 282 (quoting N.J.S.A. 3B:12-24.1(a) to

16

(b)). "A judgment of limited guardianship may specify the limitations upon the authority of the guardian or alternatively the areas of decision making retained by the person." Ibid. (quoting N.J.S.A. 3B:12-24.1(b)).

"After determining whether a general or limited guardian is appropriate, the court must then appoint an individual to serve as the guardian." Ibid. (citing R. 4:86-6(c)). The court possesses "broad powers and maintains far-reaching discretion in guardianship appointments . . . ." Mason, 305 N.J. Super. at 128.

## III.

Based on our review of the record, we are satisfied the procedural steps required by our court rules and statutes were followed in this case. A guardianship complaint was filed with notice to A.H.; the complaint was accompanied by the affidavits of qualified medical professionals; a hearing was convened, testimony was taken; A.H. was represented by independent counsel; the trial court made independent findings of fact applying the clear-and-convincing-evidence standard; and A.H. was adjudicated by the court as incapacitated with respect to the divorce litigation. The judgment of incapacity and appointment of A.H.'s guardian thus comported "with the due process safeguards required by our court rules and statutes." S.T., 241 N.J. at 282.

We emphasize the trial judge made clear and well-articulated credibility assessments regarding the expert witnesses who testified. "[W]e rely on the trial court's acceptance of the credibility of the expert's testimony and the court's fact-finding based thereon, noting that the trial court is better positioned to evaluate the [expert] witness' credibility, qualifications, and the weight to be accorded [the] testimony." In re Guardianship of DMH, 161 N.J. 365, 382 (1999). We find no abuse of discretion in the trial judge's determination to accredit the opinion rendered by Dr. Dyckman, the sole psychiatrist to evaluate A.H., based on his thorough review of A.H.'s psychiatric history. The trial judge reasoned his analysis was most consistent with the facts adduced at the trial.

The trial judge also acted within the ambit of his discretion in discounting the opinion rendered by A.H.'s expert, Dr. Tegeder, based on the fact that her evaluation was less thorough than the one performed by Dr. Dyckman. Dr. Tegeder was also unaware of pertinent facts that might have impacted her opinion.

Nor did the trial judge abuse its discretion in placing great weight on A.H.'s testimony. The judge observed A.H. appeared to become more disturbed over the course of cross-examination and lashed out with inappropriate and defensive responses. The judge's thoughtful analysis is consistent with the

18

transcript of A.H.'s testimony. She often refused to acknowledge past events in the litigation, even when presented with court documents. We thus have no basis upon which to disturb the trial judge's findings with respect to his direct observation of A.H.'s testimony.

IV.

A.H. contends the trial judge erred in failing to order updated medical evaluations. Rule 4:86-2(b)(2) generally requires that medical evaluations by experts in support of complaints for guardianship be completed "not more than [thirty] days prior to the filing of the complaint, but said time period may be relaxed by the court on an ex parte showing of good cause."

Dr. Dyckman examined A.H. on February 24, 2021. Dr. Davelman examined A.H. on February 26, 2021 and on March 3, 2021. The guardian ad litem filed the complaint for guardianship on April 8, 2021, and A.H. requested a relaxation of the thirty-day rule, which was granted by the court. A.H. does not challenge the court's initial relaxation of the thirty-day rule.

However, she argues on appeal that at the time the trial court rendered its decision on March 31, 2022, the evaluations were over a year old. This delay was due to adjournments and scheduling conflicts resulting from the COVID-19 pandemic. We are aware of no rule requiring medical evaluations by experts be

19

completed within a certain time period of the guardianship trial. The time requirement explicitly established in Rule 4:86-2(b)(2) is measured from the filing of the complaint.

We see no basis to intervene based on the trial judge's failure to sua sponte order reevaluations. Importantly, A.H. did not request reevaluations and did not object to the admission of the medical evaluations by any of the three experts who testified. Cf. State v. Robinson, 200 N.J. 1, 20 (2009) (declining "to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available") (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)); see also J.K. v. N.J. State Parole Bd., 247 N.J. 120, 138 n.6 (2021) ( "[W]e have recognized that 'if we allowed 'late-blooming issues . . . to be raised for the first time on appeal, this would be an incentive for game-playing by counsel, for acquiescing through silence when risky rulings are made, and, when they can no longer be corrected at the trial level, unveiling them as new weapons on appeal.'") (quoting Frank M. Coffin, On Appeal: Courts, Lawyering, and Judging 84-85 (1994)).

## V.

We turn next to A.H.'s contention the trial judge erred in allowing T.H. to file an answer and testify at the guardianship hearing. A.H. acknowledges

spouses are considered "interested parties" in guardianship actions. However, she argues that because T.H. attempted to register the divorce decree entered in Cyprus, he does not consider himself to be A.H.'s spouse and therefore should not be deemed to be an "interested party."

A.H. does not cite to any precedent to support that novel argument. Nor did she object to T.H.'s status as an interested party. As we have noted, the Cyprus divorce decree was not registered based on A.H.'s objection. Accordingly, T.H. and A.H. remained legally married in this State. It therefore was entirely appropriate for purposes of the competency hearing to treat T.H. as a legal spouse and an interested party.

## VI.

Lastly, we address A.H.'s contention that the court erred by failing to order reasonable accommodations or less restrictive alternatives to appointment of a guardian, such as allowing A.H. to appear virtually in the divorce action. Rule 4:86-4(b)(iii) provides that counsel for the alleged incapacitated person shall include in their report to the court "any recommendations concerning the suitability of less restrictive alternatives. . . ." A.H. acknowledges that no such recommendation was submitted to the court by A.H.'s competency trial counsel. In these circumstances, we see no abuse of discretion in the judge's failure to

21

consider whether A.H. would have been competent to participate at a virtual divorce trial.

To the extent we have not specifically addressed them, any remaining arguments raised by appellant in her initial or supplemental briefs lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2782-21