**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0932-24

IN THE MATTER OF THE
ESTATE OF ANNE WEEMS.

_____

Submitted May 12, 2026 – Decided June 18, 2026

Before Judges Gilson and Vinci.

On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. CP-000427-22.

Wanda L. Weems, self-represented appellant.

Simon Monahan & Simon, LLC, attorneys for respondent Yolanda A. Weems-Palmer (Thomas M. Monahan, on the brief).

PER CURIAM

Plaintiff Wanda L. Weems, self-represented, appeals from an October 18, 2024 Chancery Division, Probate Part order enforcing a settlement agreement between her and defendant Yolanda A. Weems-Palmer.  We affirm.

## I.

On October 10, 2022, plaintiff filed a complaint seeking to be appointed as guardian for her mother, Anne Weems, and accusing defendant, her sister, of placing Anne in an assisted living facility against her will, in order to "sell her properties," among other things. Plaintiff alleged "Anne has dementia, . . . seizures, . . . memory lapses as well as some memory loss, which [were the] results of her brain injury in 2018."

On December 5, 2022, the court entered an order to show cause (OTSC) why judgment should not be entered awarding plaintiff temporary guardianship and "stop[ping] the sale of Anne['s] . . . home" on Farley Avenue in Newark (the property). The court scheduled a hearing for December 22, 2022.

On December 17, 2022, plaintiff went to the assisted living facility where Anne was residing and procured her signature on a deed transferring the property to plaintiff for $1 (the deed). On December 22, 2022, plaintiff caused the deed to be recorded with the Essex County Clerk.

On January 12, 2023, defendant filed an answer and counterclaim seeking, among other relief, to be appointed as guardian for Anne and to vacate the deed and quiet title to the property. She alleged plaintiff "either forged Anne's signature" on the deed "or procured Anne's signature . . . despite her incapacity"

2

after seeking "[g]uardianship of Anne . . . based upon such incapacity."  That same day, the court entered an order denying plaintiff's request to be appointed temporary guardian and appointing defendant "temporary guardian of the person and estate of Anne."  The court ordered defendant to file a complaint for guardianship and permitted plaintiff to do the same, "if she [chose] to do so."

On February 8, 2022, defendant filed her verified complaint seeking to be appointed as guardian for Anne, supported by certifications of two physicians that Anne suffered from "dementia" and was "unfit and unable to govern herself . . . and to manage her . . . affairs."  On April 18, 2023, the court entered an order appointing an attorney for Anne to conduct an investigation and file a report pursuant to Rule 4:86-4(b).

On August 7, 2023, Anne's appointed attorney submitted a report recommending the court "enter adjudication of incapacitation and issue letters of general guardianship over [her] person and property to [defendant]."  He could not "fathom how [Anne] ever had the capacity . . . to transfer . . . the deed to the" property and recommended the deed "be deemed void at [its] inception due to lack of capacity on [Anne's] part and revoked."  On August 24, 2023, the court entered a judgment of incapacity and appointed defendant as guardian of Anne and her estate.

A-0932-24

On January 11, 2024, the court entered an order establishing a briefing schedule in connection with defendant's contention "that the deed should be voided[,] and the property [should] go back into the [e]state of her ward." Defendant served a February 19, 2024 expert report by Dr. Mihir J. Shah, who opined that Anne "lacked the capacity to understand the consequences of signing her house over for $1[] in December 2022." On July 3, 2024, the court entered an order scheduling a trial on defendant's claim that the deed should be voided.

The parties, who were both represented by counsel, appeared for trial on August 15, 2024. After several hours of negotiations, counsel advised the court that the parties had reached a settlement and placed the terms of the settlement on the record. The parties "agreed that [plaintiff would] execute a deed to the property . . . back to Anne" and the deed would "be held in escrow [by plaintiff's counsel] pending . . . [plaintiff's] purchase of the property pursuant to the terms of th[e] settlement." "The purchase price [would] be based upon an appraisal . . . to determine the fair market value" by an appraiser appointed by the court.

Plaintiff agreed to "cooperate to promptly schedule" the appraisal and "provide access . . . to complete the appraisal." Plaintiff agreed to provide a "pre-approval of her ability to complete the purchase" "within [thirty] days" and

A-0932-24

"close on the purchase within [sixty] days of the date of . . . the appraisal." Defendant agreed plaintiff "w[ould] be entitled to a credit against the purchase price for documented improvements to the property." Defendant also agreed to provide plaintiff with "a copy of the guardianship accounting which [was] due to the [c]ourt" on approximately September 1, 2024.

The parties agreed if plaintiff did "not provide either the pre[-]approval or . . . proceed with the purchase of the property" the deed would "be released from escrow and recorded and the property [could] then be sold to a third party or refinanced or reverse mortgage in accordance with [defendant's] discretion to obtain funds to pay for Anne's care." Defendant agreed to cooperate with plaintiff "with the clearing of the title" so that she could "get a loan on the property." Defense counsel agreed to discharge the lis pendens on the property "if that is a loan condition" and "if need be . . . [to] provide a discharge of the lis pendens also to be held in escrow pending closing."

Plaintiff testified under oath that she understood the terms of the agreement, agreed to the terms of the agreement, and entered into the agreement voluntarily. Plaintiff agreed the terms were "fair and adequate and just . . . in light of . . . the circumstances" and she would "abide by the[] terms." While plaintiff's counsel was questioning her, she clarified her understanding that "[i]f

A-0932-24

this house appraises for less than what [defendant] tried to sell it for before, . . . that[ is] the rate [they were] going to go with."

Plaintiff testified nobody "force[d] . . . or coerce[d] her . . . to enter into th[e] agreement." She also confirmed her counsel "represented [her] for approximately the last two months" and this was "not the first time that [they had] discussed these terms." Plaintiff testified she did not have "any questions of [her counsel] or the [j]udge" and was "satisfied with [her counsel's] services." Plaintiff then signed the deed returning the property to Anne and her counsel "explain[ed] each thing" to her "as she sign[ed]" it.

After the parties testified, the court

> f[ound] that [they] ha[d] voluntarily entered into a settlement which encompasse[d] all of the issues that were open on the ownership of the property that was held in the name of Anne . . . and transferred to [plaintiff]. [It] f[ound] that the parties . . . ha[d] entered into the agreement voluntarily. That both agree[d] that under all circumstances it is a fair agreement, and [it] f[ound] that th[e] agreement contain[ed] all of the material terms of their agreement such that if there are other terms that they wish to add at a later date, and both sides agree, they can do that.
>
> But the elements of the agreement which were placed on the record [were] the agreement. It [was] an enforceable agreement. So, if either side d[id] not comply with the agreement or its components then the parties c[ould] come into court to have it enforced.

6

Immediately following the settlement, the parties scheduled the appraisal to be conducted by the court-appointed appraiser. On August 16, 2024, plaintiff sent two letters to the court captioned "[r]escind [l]etter" and "[c]ancellation of [c]ontract [l]etter." Plaintiff stated she "wish[ed] to rescind" and cancel "[her] previous instruction to transfer [her] property . . . to Anne or her estate" and "no longer wish[ed] for [her] asset to leave [her]." She demanded to "immediately stop all processing of this transaction of this transfer."

She asserted there were "[m]istake of [f]acts" because "[t]ransferring [her] property to Anne . . . would [stop] her from receiving Medicaid as per represent[ative] of Medicaid" and "[t]he property [would] become a large asset and the five years spend down calculator will restart." She asserted "Medicaid is only concerned about the [f]air [m]arket [v]alue of the property on the date in which it was sold to [her] for $1[]."

She also contended the settlement agreement was "an unconscionable contract[] because the property [was] legally owned by [her], and [her] rights should not be compromised." Plaintiff asserted "[m]ost importantly, due to the concerns of the guardian['s] inability to account for the management of assets, [she] believe[d] it[ was] in the best interests of Anne" to have the property

A-0932-24

"available for Anne's convenien[ce] to reside in the event, she is soon or in the future removed from a [f]acility due to nonpayment."

On September 30, 2024, plaintiff filed a motion pursuant to Rule 5:5-4 seeking "[c]ancel[l]ation of agreement." Plaintiff contended on "August 15, 2024, an incomplete[] oral order was placed on the record in which [the court] instructed [counsel] to complete terms and conditions of the agreement." She argued "[t]hese instructions were never followed" and "[t]his is necessary to provide a clear and legal agreement." Plaintiff argued defense counsel failed "to remove the [lis pendens] off [her] property[] and submit to [her] the payoff statement" causing her "to be unable to secure a loan."

Plaintiff also sought an "order to disregard the first [five]–[ten] minutes of the oral agreement" because she "was not a[]part of the conversation and [her counsel] misrepresented [her]." She claimed "the trial transcripts were edited or[] merged with appearances of [her] being a part of the conversation when [she] was not in the courtroom during the first part of the oral agreement."

Defendant subsequently filed a proposed OTSC to enforce the settlement. On October 18, 2024, the court heard oral argument on the pending applications. Plaintiff appeared, self-represented, and argued "the settlement was never authorized or finalized," she "was misrepresented by [her] attorney," she "was

8

under duress," and "the transcript was altered." She claimed "the loan fell through because they . . . did[ not] [re]move the lis [pendens] and . . . did not give [her] the settlement." Plaintiff also argued it was "[her] property that [her] mother sold to [her] before we even came to put guardianship" and "this should not even be a guardianship case."

Defense counsel responded that he and plaintiff's former counsel contacted the court-appointed appraiser immediately after the settlement was placed on the record and "had an appraiser scheduled until [plaintiff] cancelled" it. He argued the reason plaintiff did not get a loan was that "[s]he, on her own, cancelled the appraisal and sent a letter saying that she changed her mind . . . and did[ not] want to buy the property." The appraisal "was the very first step to determine what she was going to be paying for the property."

Following oral argument, the court entered an order enforcing the settlement agreement, supported by an oral decision. It found the terms of the settlement were placed on the record and are "embodied in [the] transcript that contains all of the terms of the settlement" and "acknowledgments by both parties." The settlement "was consented to in the presence of and agreed to under oath by [plaintiff] in the presence of her attorney."

A-0932-24

The court was "satisfied that [the] settlement agreement [was] a fully enforceable agreement" and "the parties were fully questioned and were asked if they believed that it was fair under all of the terms" and "[t]hey agreed." It found it was "undisputed . . . [plaintiff] cancelled the appraisal that was scheduled and . . . asserted that she was rescinding the agreement." The court determined plaintiff "asserted . . . she [was] not going forward with the purchase of the property" and, therefore, "the deed should be released to the attorney for [defendant], so that the property [could] be placed on the market for sale" pursuant to the terms of the settlement agreement.

## II.

On appeal, plaintiff argues: (1) the court did not have jurisdiction because "[p]robate courts have limited jurisdiction and may only adjudicate matters involving the [e]state of a deceased person"; (2) the settlement agreement was incomplete and unenforceable because "[t]here was no specified agreed amount of compensation for [her]" and it was "never finalized"; (3) the court did not "acknowledge that [her] performance was rendered impossible" by defendant's failure to discharge the lis pendens and "enforce[d] the agreement against [her] without requiring [d]efendant to first perform a critical term"; (4) the agreement violated the statute of frauds, N.J.S.A. 25:1-13; (5) the court should have

A-0932-24

enforced a prior proposed July 30, 2024 consent order that defendant rejected and refused to sign; (6) her "rights and the principles of fairness have been compromised due to judicial misconduct and preferential treatment toward" defense counsel; (7) she was deprived of "property rights without due process" in violation of the Fourteenth Amendment, U.S. Const. amend. XIV; (8) the court's order enforcing the settlement constituted the "taking of private property without payment or just compensation" in violation of the Fifth Amendment, U.S. Const. amend. V; (9) she was under "stress and duress" and "did not know she was being defrauded by the judicial system"; (10) defendant has "unclean hand[s]" and "wants to be unjustly enriched"; and (11) she "purchased the [property] for $1[] before [this] matter was heard" and the court did not have "authority to undo this lawful transfer unless a civil complaint was filed."

III.

We are unpersuaded by plaintiff's arguments and affirm substantially for the reasons set forth by the court in its oral decision. We add the following comments.

"Our review of a motion to enforce [a] settlement is de novo." Gold Tree Spa, Inc. v. PD Nail Corp., 475 N.J. Super. 240, 245 (App. Div. 2023) (quoting Amatuzzo v. Kozmiuk, 305 N.J. Super. 469, 474-75 (App. Div. 1997)). Thus,

no special deference is accorded a trial court's interpretation of an agreement entered into by the parties. Kaur v. Assured Lending Corp., 405 N.J. Super. 468, 474 (App. Div. 2009).

Settlement agreements are "governed by principles of contract law." Thompson v. City of Atlantic City, 190 N.J. 359, 379 (2007). "[I]f parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract." Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992). "[A] contract is no less a contract because some preferable clauses may be omitted either deliberately or by neglect. So long as the basic essentials are sufficiently definite, any gaps left by the parties should not frustrate their intention to be bound." Berg Agency v. Sleepworld-Willingboro, Inc., 136 N.J. Super. 369, 377 (App. Div. 1975).

Based on our de novo review, we are convinced the court properly granted defendant's application to enforce the settlement. There is no genuine dispute about the fact that the parties agreed on the essential terms of the settlement agreement. Plaintiff agreed to execute a deed to be held in escrow in exchange for defendant's agreement to abandon her claim that the deed transferring the property from Anne to plaintiff was void and to permit plaintiff to purchase the property at the fair market value as determined by the court-appointed appraiser.

A-0932-24

Defendant also agreed to cooperate with plaintiff and her lender, including agreeing to discharge the lis pendens at closing, to facilitate plaintiff's purchase of the property.

Plaintiff's claim that defendant failed to satisfy an essential condition of the contract because she did not discharge the lis pendens lacks merit. As the court found, plaintiff was unable to obtain a loan and purchase the property because she cancelled the appraisal and attempted to rescind the agreement, not due to defendant's failure to discharge the lis pendens.

Plaintiff's argument that the settlement agreement violated the statute of frauds lacks merit. N.J.S.A. 25:1-13 provides:

> An agreement to transfer an interest in real estate or to hold an interest in real estate for the benefit of another shall not be enforceable unless:
>
> a. a description of the real estate sufficient to identify it, the nature of the interest to be transferred, the existence of the agreement, and the identity of the transferor and transferee are established in a writing signed by or on behalf of the party against whom enforcement is sought; or
>
> b. a description of the real estate sufficient to identify it, the nature of the interest to be transferred, the existence of the agreement and the identity of the transferor and the transferee are proved by clear and convincing evidence.

A-0932-24

Even if the statute of frauds applied to an agreement to settle a lawsuit, there is no question the terms of the agreement, which were placed on the record in open court, can be "proved by clear and convincing evidence" as required by N.J.S.A. 25:1-13(b).

Plaintiff's claim that the court did not have jurisdiction to determine ownership of the property because Anne was alive is incorrect. The Chancery Division, Probate Part has jurisdiction to hear "[e]very action for the determination of incapacity of a person and for the appointment of a guardian for that person or of the person's estate or both." R. 4:86-1(a).

The ability of the Probate Part to appoint a guardian and confer the court's power to exercise control over a ward's estate and affairs on a guardian, is broad and discretionary. Matter of Mason, 305 N.J. Super. 120, 128-29 (Ch. Div. 1997); see also In re Quinlan, 70 N.J. 10, 44-45 (1976). In recognition of the Probate Part's significant authority, N.J.S.A. 3B:12-36 states, "[i]f a guardian has been appointed to the estate of . . . an incapacitated person, the court shall have authority over the ward's estate, and all matters relating thereto." Here, defendant alleged plaintiff procured Anne's signature on the deed despite her incapacity while the probate action was pending. The court plainly had jurisdiction to determine if the property was an asset of Anne's estate.

A-0932-24

Plaintiff's claim that she was deprived of due process is belied by the record. The Due Process Clause of the Fourteenth Amendment provides that a State may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, § 1. Due process is a flexible concept that "depends on the particular circumstances" of the case. Doe v. Poritz, 142 N.J. 1, 106 (1995). It requires adequate notice and the opportunity to be heard, Harrison Redevelopment Agency v. DeRose, 398 N.J. Super. 361, 403 (App. Div. 2008), which is further understood as an opportunity to be heard at a meaningful time and in a meaningful manner, Klier v. Sordoni Skanska Constr. Co., 337 N.J. Super. 76, 84 (App. Div. 2001). In this case, there is no dispute plaintiff was given proper notice, and the record reflects she was heard in a meaningful manner both at the time of the settlement, when she was represented by counsel, and at the argument on the enforcement motions, when she proceeded self-represented.

Finally, we have carefully reviewed the underlying proceedings and are satisfied plaintiff's claims of judicial misconduct and preferential treatment toward defense counsel are baseless. The court took great pains to treat plaintiff fairly, gave her ample time to place her arguments on the record, and gave all of

15

her arguments appropriate consideration.  Additionally, there is no evidence of any preferential treatment toward defense counsel.

To the extent we have not specifically addressed any remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0932-24