SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

## In the Matter of A.D., an alleged incapacitated person
### (A-30/31-23) (088942)

**Argued September 9, 2024 -- Decided December 11, 2024**

**PER CURIAM**

In this guardianship action, a court-appointed attorney and temporary guardian for an "alleged incapacitated person" under Rule 4:86 seek awards of legal fees against an adult protective services provider.

In June 2020, after the Sussex County Division of Social Services, Office of Adult Protective Services (APS), filed a verified complaint seeking a plenary guardianship and other assistance for "Hank," petitioner Steven J. Kossup was designated as Hank's court-appointed attorney and petitioner Brian C. Lundquist was designated as his temporary guardian for the duration of the guardianship proceedings. The order making those appointments included two alternative provisions regarding the payment of the court-appointed attorney's fees; the second alternative, providing for the court-appointed attorney's fees to be paid, was checked. The order did not address fees incurred by the temporary guardian. It was signed by the Sussex County Surrogate, not the trial judge.

In a certification from February 2021, Lundquist described his unsuccessful efforts to locate a state agency, private organization, or individual willing to serve as Hank's permanent plenary guardian. Lundquist reported, however, that he and Kossup had taken critical steps to ensure that Hank had stable housing, financial assistance, medical care, and other necessary services. Lundquist asserted that because Hank had access to those services, he did not require a permanent plenary guardian. In the wake of those developments, Kossup concurred with Lundquist's view that the trial court should order a limited guardianship.

Based on the recommendations of two physicians, APS maintained its position that a permanent plenary guardian should be appointed for Hank. At his own expense, Lundquist retained an expert psychologist to evaluate Hank. The psychologist opined in a report that Hank did not require the appointment of a plenary guardian but needed only "a limited guardianship in the legal and medical domains." The court ultimately agreed that Hank did not require a plenary guardian.

1

In advance of the guardianship hearing, Kossup and Lundquist submitted certifications setting forth the services they had provided to Hank, with fee applications. APS stated that it had no objection to the amount of the fees sought but argued that it should not be responsible to pay any fee award because fee awards in cases like this would compromise its ability to meet its clients' needs.

The trial court expressed its appreciation for the "significant efforts" of Kossup and Lundquist, but it found no basis for the fees in the Adult Protective Services Act (APS Act) and declined to construe Rule 4:86-4(e) to require APS to pay the fees of court-appointed attorneys. Accordingly, the trial court denied the fee applications. The Appellate Division affirmed. 477 N.J. Super. 288, 297-302 (App. Div. 2023). The Court granted certification. 257 N.J. 2 (2024); 257 N.J. 10 (2024).

**HELD:** There is no support in the governing statutes, the court rules, or New Jersey case law for the fee awards sought in this appeal. The trial court properly exercised its discretion when it denied the fee applications, and the Appellate Division ruled correctly when it affirmed the trial court's determination.

1. The American Rule -- to which New Jersey courts have traditionally adhered -- requires that litigants bear the cost of their own legal representation by prohibiting recovery of counsel fees by the prevailing party against the losing party. The American Rule, however, is not absolute. Rule 4:42-9(a) provides that "[n]o fee for legal services shall be allowed in the taxed costs or otherwise," but identifies eight exceptions to that rule, two of which are relevant here. (pp. 14-16)

2. The first exception is for "all cases where attorney's fees are permitted by statute." R. 4:42-9(a)(8). The Court reviews the purpose and relevant provisions of the APS Act, which authorizes a court to "order payments to be made by or on behalf of the vulnerable adult for protective services from his own estate," N.J.S.A. 52:27D-418, and defines "[p]rotective services" to include "legal . . . services necessary to safeguard a vulnerable adult's rights and resources," id. at -407. And the statute addressing temporary guardianships provides that a "temporary guardian, upon application to the court, shall be entitled to receive reasonable fees for his services, as well as reimbursement of his reasonable expenses, which shall be payable by the estate of the alleged incapacitated person or minor." N.J.S.A. 3B:12-24.1(c)(9). Both of the statutes that govern the guardianship proceeding in this matter provide for fee awards against the estate of the alleged incapacitated person, but neither authorizes an award against a services provider such as APS. (pp. 16-19)

3. The second exception invoked here relies on Rule 4:42-9(a)(3), which provides that "[i]n a guardianship action, the court may allow a fee in accordance with R. 4:86-4(e)," and Rule 4:86-4(e), which states that "[t]he compensation of the attorney for the party seeking guardianship, appointed counsel, and of the guardian ad litem,

2

if any, may be fixed by the court to be paid out of the estate of the alleged incapacitated person or in such other manner as the court shall direct." In In re Guardianship of DiNoia, the Appellate Division, citing no authority, affirmed an order requiring APS to pay the legal fees of court-appointed counsel because APS had "protracted the litigation" by failing to supply required information in a timely manner and the court-appointed attorney contributed "exceptional efforts" on his client's behalf. 464 N.J. Super. 562, 567-69 (App. Div. 2019). The Court declines to adopt the Appellate Division's holding in DiNoia, or to broaden that holding to generally authorize fee awards in settings such as this. The language of Rule 4:86-4(e), "or in such other manner as the court shall direct," does not create a new exception to the American Rule, and the suggestion that the Court should order an increase in APS's funding ignores separation of powers principles. The Court does not construe Rule 4:42-9(a)(3) or Rule 4:86-4(e) to authorize fee awards against adult protective services providers under any circumstances, even if they have protracted the litigation. Instead, in matters in which the alleged incapacitated person's estate lacks the resources to pay fee awards, court-appointed attorneys and temporary guardians have traditionally served pro bono. (pp. 19-21)

4. The Court notes that the fee provision in the June 2020 order was confusing and cautions judges that a lawyer asked to serve as counsel or guardian for an alleged incapacitated person should be told that the court anticipates the lawyer will serve pro bono if the estate lacks resources to pay the lawyer's fees. The Court also reminds judges handling these matters that it is the court, not the Surrogate, who appoints counsel, determines whether a temporary guardian should be appointed, and addresses the question of compensation. Finally, the Court suggests that before retaining experts in a guardianship matter, temporary guardians serving pro bono raise the question of expert fees with the court and opposing counsel and determine whether resources are available to defray all or part of those fees. (pp. 21-22)

5. The Court recognizes the critical role of pro bono service in guardianship matters in which a vulnerable person is indigent and explains that such service may now entitle New Jersey attorneys to an exception to the court-appointed representation requirements. The Court nevertheless expresses concern that pro bono service in guardianship matters can impose substantial burdens on lawyers and urges judges to consider the fair allocation of those burdens when they ask lawyers to serve as court-appointed counsel or guardians. The Court thanks Kossup and Lundquist for their exemplary work on Hank's behalf. (pp. 22-24)

**AFFIRMED.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, FASCIALE, and NORIEGA join in this opinion. JUSTICE HOFFMAN did not participate.**

3

SUPREME COURT OF NEW JERSEY
A-30/31 September Term 2023
088942

In the Matter of A.D.,
an alleged incapacitated person.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
477 N.J. Super. 288 (App. Div. 2023).

Argued                    Decided
September 9, 2024     December 11, 2024

Steven J. Kossup argued the cause for appellant Steven J.
Kossup (Law Office of Steven J. Kossup, attorneys;
Steven J. Kossup, on the briefs).

Brian C. Lundquist argued the cause for appellant Brian
C. Lundquist (Morris, Downing & Sherred, attorneys;
Brian C. Lundquist, of counsel and on the briefs).

William G. Johnson argued the cause for respondent
County of Sussex Division of Social Services, Office of
Adult Protective Services (Johnson & Johnson, Esqs.,
attorneys; William G. Johnson, of counsel and on the
brief).

Stephen J. Slocum, Deputy Attorney General, argued the
cause for amicus curiae Attorney General of New Jersey
(Matthew J. Platkin, Attorney General, attorney; Jeremy
Feigenbaum, Solicitor General, and Donna Arons,
Assistant Attorney General, of counsel, and Stephen J.
Slocum, on the brief).

PER CURIAM

In this guardianship action, a court-appointed attorney and temporary guardian for an "alleged incapacitated person" under Rule 4:86 sought awards of legal fees against an adult protective services provider. The trial court denied the fee applications, and the Appellate Division affirmed. In re A.D., 477 N.J. Super. 288, 297-302 (App. Div. 2023). We granted certification.

For the reasons explained below, we find no support in the governing statutes, the court rules, or our case law for the fee awards sought in this appeal, and we accordingly affirm the judgment of the Appellate Division.

I.

A.

This matter concerns an alleged incapacitated person whom the trial court and Appellate Division designated by the fictitious name "Hank" to preserve his privacy and maintain the confidentiality of the record. See id. at 290; R. 1:38-3(e).

In 1978, when he was sixteen years old, Hank sustained a traumatic brain injury. Hank lived with his father in his family home until his father's death in 2020. Left alone, and having never lived independently, Hank struggled to care for himself and maintain the home, which he did not own. He was referred to the Sussex County Division of Social Services, Office of

Adult Protective Services (APS) for help in finding housing, financial assistance, and support services.

APS's investigation revealed that Hank had no assets and that his sole income -- $834.25 per month in Social Security income and disability benefits -- had been suspended. At APS's request, two physicians, one of them a board-certified psychiatrist, evaluated Hank's cognitive abilities and living conditions. Both opined that Hank was unable to live independently and that he required a permanent plenary guardian to generally oversee his personal and financial affairs, rather than a limited guardian whose role would be constrained to one or more categories of decision-making. Compare N.J.S.A. 3B:12-24.1(a) (describing a general, or plenary, guardian), with id. at (b) (describing a limited guardian).

On June 2, 2020, APS filed a verified complaint seeking: (1) a declaration that Hank was incapacitated and unable to manage his affairs; (2) the appointment of a temporary guardian with authority to make decisions regarding Hank's medical and psychiatric treatment; and (3) the appointment of a plenary guardian for Hank. Pursuant to Rule 4:86-2(b)(2), APS supported its claims with the certifications of the two physicians who had evaluated Hank. APS's complaint included detailed allegations regarding Hank's lack of

3

assets, his limited income, and his inability to continue to live in his current housing.[1]

By order dated June 11, 2020, petitioner Steven J. Kossup was designated as Hank's court-appointed attorney, and petitioner Brian C. Lundquist was designated as Hank's temporary guardian for the duration of the guardianship proceedings. The form of order included two alternative provisions regarding the payment of the court-appointed attorney's fees, one stating that the attorney was "appointed pro bono (without cost)," and the other stating that the attorney "is to be paid" and that "the court may direct that counsel be paid from the assets of the alleged incapacitated person or in such manner as the court shall direct." The second alternative, providing for the court-appointed attorney's fees to be paid, was checked. The order did not address fees incurred by the temporary guardian. It was signed by the Sussex County Surrogate, not the trial judge.

---

[1] In its complaint, APS alleged that it should bear no responsibility for the costs and fees incurred by Hank's court-appointed attorney and temporary guardian. Those allegations were deleted from a copy of the complaint that the Sussex County Surrogate returned to APS's counsel, and APS objected to the deletion of its allegations without its consent. We note that although Rule 4:86-3A(a) requires the Surrogate to "review the complaint to ensure that proper venue is laid and that it contains all information required by R. 4:86-2," the Rule does not authorize the Surrogate to delete allegations set forth in a guardianship complaint without the consent of the party that filed the complaint.

4

On September 8, 2020, Kossup submitted an interim report to the trial court. He explained that he concurred with the recommendations of the physicians retained by APS that a plenary guardian should be appointed for Hank based on Hank's current condition but noted that he and Lundquist had made progress in their efforts to arrange services for Hank. Kossup stated that the resolution of issues under consideration might affect his final recommendation regarding the appointment of a guardian.

In a certification dated February 17, 2021, Lundquist described his unsuccessful efforts to locate a state agency, private organization, or individual willing to serve as Hank's permanent plenary guardian. He noted that Hank was not yet old enough to be eligible for a guardianship overseen by the New Jersey Office of the Public Guardian.

Lundquist reported, however, that he and Kossup had taken critical steps to ensure that Hank had stable housing, financial assistance, medical care, and other necessary services. Lundquist stated that by virtue of their efforts and the work of several other individuals, Hank had moved into a new apartment financed in part by a New Jersey Department of Human Services housing assistance contribution. He advised the trial court that Hank's Social Security benefits had been restored and that Hank had access to services to help him with his financial affairs, medical care, and daily tasks. Lundquist asserted

that because Hank had access to those services, he did not require a permanent plenary guardian. Lundquist recommended that Hank's current services, supervision, and benefits should continue.

In the wake of those developments, Kossup modified his original recommendation that the court appoint a plenary guardian and concurred with Lundquist's view that the trial court should instead order a limited guardianship.

In preparation for the guardianship hearing to be conducted by the trial court, APS asked the two physicians who had recommended a plenary guardian to interview Hank a second time and provide updated recommendations. One of the physicians reiterated his original opinion that Hank's circumstances warranted a full guardianship. The other physician noted that Hank's situation had improved by virtue of the services provided to him but did not alter her recommendation that he required a plenary guardian. Given those recommendations, APS maintained its position that a permanent plenary guardian should be appointed for Hank.

At his own expense, Lundquist retained an expert psychologist to evaluate Hank. The psychologist opined in a report that Hank did not require the appointment of a plenary guardian but needed only "a limited guardianship

6

in the legal and medical domains." Lundquist submitted the psychologist's report to the trial court.

B.

In advance of the guardianship hearing, Kossup and Lundquist submitted certifications setting forth the services that they had provided to Hank. Kossup certified that he spent 13.7 hours on the matter at a reduced rate of $275 per hour, for a total of $3,767.50.[2] Lundquist certified that he had spent 44 hours on the guardianship matter at a rate of $295 per hour, for a total of $12,980. He also included in his fee application a request to be reimbursed for his $1,500 disbursement to the expert he had retained on Hank's behalf and for other expenses in the amount of $532.18.

On July 22, 2021, the trial court conducted a guardianship hearing regarding Hank. Kossup and Lundquist argued that because of the services arranged for him, Hank required only a limited guardianship to assist him with legal and medical decisions. Hank consented to the appointment of a guardian for those purposes. Crediting the efforts of Kossup and Lundquist and the services provided for Hank, APS advised the court that it no longer sought a

_____

[2] In his petition for certification, Kossup stated that he seeks an updated total of $5,225 in legal fees for his work on the matter.

permanent plenary guardianship and agreed that a limited guardianship would meet Hank's needs.

Recognizing the "exceptional" work of Kossup and Lundquist and relying on the expert reports submitted by the parties, the trial court declined to appoint a plenary guardian for Hank. The court instead appointed a nonprofit organization as Hank's guardian, solely to assist him in legal and medical decision-making.

During the guardianship hearing, APS stated that it had no objection to the amount of the fees sought, but argued that it should not be responsible to pay any fee award. In a certification submitted after the hearing, APS's Director described the agency's limited budget and argued that fee awards against it in cases such as this would impact its ability to provide to its clients essential services like emergency safe housing, home health aides, and medical assessments.

In a second hearing held by the trial court to address the question of fees, APS restated its contention that the requested fee awards would compromise its ability to meet its clients' needs. APS asserted that Kossup and Lundquist, who knew that Hank had no assets when they accepted the court's appointments, could have declined those appointments. Kossup and Lundquist argued that because Sussex County's budget reflected millions of

8

dollars in reserve funding and a surplus for the current year, the County had ample resources to pay the disputed fees notwithstanding APS's limited funding. They urged the court to order payment of their fees and to reimburse Lundquist for the expert fee he had incurred on Hank's behalf.

In a written statement of reasons accompanying its order, the trial court expressed its appreciation for the "significant efforts" of Kossup and Lundquist, which permitted Hank to secure needed services while maintaining his independence. The court noted, however, that APS had acted in accordance with its mandate under the Adult Protective Services Act (APS Act), N.J.S.A. 52:27D-406 to -426, and that this matter involved neither extraordinary circumstances nor agency malfeasance on the part of APS. The trial court found no basis in the APS Act for fee awards in the setting of this case.

The trial court also addressed the contention of Kossup and Lundquist that Rule 4:86-4(e) authorized the fee awards they sought. The court noted that the Legislature created APS to serve vulnerable adults and declined to construe Rule 4:86-4(e) to require APS to pay the fees of court-appointed attorneys in most or all cases, given the lack of any fee provision in the APS Act.

9

Accordingly, the trial court denied Kossup's application for an award of fees and Lundquist's application for an award of fees and costs.

C.

In separate appeals consolidated by the Appellate Division, Kossup and Lundquist challenged the trial court's decision. They argued that APS was responsible for the fees they incurred because it initially advocated for a full guardianship, not a limited guardianship, and that the trial court had misapplied Rule 4:86-4(e). Kossup additionally argued that the trial court was required to award fees by virtue of the Surrogate's June 11, 2020 order, in which the form provision stating that the court-appointed lawyer "is to be paid" had been checked.

The Appellate Division noted that in the APS Act, "the Legislature did not give courts the authority to order APS to pay fees under these circumstances." A.D., 477 N.J. Super. at 299. The appellate court construed both governing statutes -- the APS Act and the statute addressing temporary guardianships, N.J.S.A. 3B:12-24.1 -- to authorize fee awards only from the alleged incapacitated person's estate. Ibid.

The Appellate Division cited its prior holding in In re Farnkopf, 363 N.J. Super. 382, 403 (App. Div. 2003). In Farnkopf, the appellate court construed the APS Act's provision addressing provider immunity in civil cases, N.J.S.A.

10

52:27D-409(e), to bar any fee award absent evidence that the adult protective services provider or its employees acted outside the scope of their employment or engaged in conduct constituting "a crime, actual fraud, actual malice, or willful misconduct."  363 N.J. Super. at 403 (quoting N.J.S.A. 52:27D-409(e)). Applying Farnkopf, the Appellate Division here found no evidence of misconduct by APS.  A.D., 477 N.J. Super. at 300.  To the contrary, the appellate court held that when APS initially concluded that Hank required a full guardianship -- a view premised on the physicians' recommendations and initially shared by Kossup -- it had acted appropriately.  Ibid.

The Appellate Division rejected Kossup's argument that he was entitled to a fee award based on the provision in the Surrogate's June 11, 2020 order stating that Kossup "is to be paid."  Id. at 300-01.  The appellate court observed that the order was not signed by the trial court, but by the Surrogate, and did not view that order to support Kossup's claim.  Ibid.

Accordingly, the appellate court affirmed the trial court's denial of both fee applications.  Id. at 301.

D.

We granted the petitions for certification filed by Kossup and Lundquist. 257 N.J. 2 (2024); 257 N.J. 10 (2024).  We also granted the application of the Attorney General to appear as amicus curiae.

11

## II.

### A.

Kossup argues that the Appellate Division improperly relied on the APS statute's provision addressing immunity from civil liability, N.J.S.A. 52:27D-409, in denying his fee application. He contends that the appellate court's ruling that the APS statute authorizes payment of a court-appointed attorney's legal fees only from the estate of the alleged incapacitated person contradicts Rule 4:86-4(e). Kossup adds that even if the trial court had the discretion to modify the Surrogate's order stating that he would be granted a fee award, he relied on that order to his detriment.

### B.

Lundquist asserts that by virtue of the Appellate Division's decision, an attorney appointed to serve as a temporary guardian for an alleged incapacitated person must fully fund the guardianship action. He argues that this burden is particularly onerous for solo and small-firm practitioners. Lundquist faults APS for refusing to retreat from its position that Hank required a full guardianship for nearly a year, complicating the action and requiring him to retain an expert. He claims that APS's refusal to promptly modify its recommendation when Hank's circumstances improved warrants the requested fee awards.

12

C.

APS urges us to affirm the Appellate Division's decision. It contends that the Appellate Division correctly viewed the APS Act to preclude fee awards against it absent agency misconduct, and it argues that there is no conflict between that Act and Rule 4:86-4(e). APS asserts that if fees were awarded in cases such as this, it would be unable to implement the APS Act's mandate because its scarce resources would be diverted from client services to legal disputes.

D.

The Attorney General argues that appointed counsel in guardianship matters should be paid from the estate of the alleged incapacitated person if the estate has adequate funds and that, in other cases, counsel should ordinarily provide services pro bono. The Attorney General asserts that there may be exceptional circumstances such as misconduct by the adult protective services provider that might warrant a fee award but that there are no such circumstances in this appeal.

III.

A.

When we review a trial court's decision granting or denying a fee application, that determination "will be disturbed only on the rarest occasions,

13

and then only because of a clear abuse of discretion." Rendine v. Pantzer, 141 N.J. 292, 317 (1995); accord Hansen v. Rite Aid Corp., 253 N.J. 191, 212 (2023) (noting that an appellate court may reverse a fee determination when the "decision 'was based on irrelevant or inappropriate factors, or amounts to a clear error in judgment'" (quoting Garmeaux v. DNV Concepts, Inc., 448 N.J. Super. 148, 155-56 (App. Div. 2016))).

When we address a trial court's construction of a statute, our review is de novo. Libertarians for Transparent Gov't v. Cumberland County, 250 N.J. 46, 55 (2022). In that inquiry, we look to the Legislature's intent as expressed in the statute's plain terms. Id. at 54 (citing DiProspero v. Penn, 183 N.J. 477, 492-93 (2005)). We also review de novo a trial court's interpretation of a court rule, "applying 'ordinary principles of statutory construction' to interpret" the rule. DiFiore v. Pezic, 254 N.J. 212, 228 (2023) (quoting State v. Robinson, 229 N.J. 44, 67 (2017)).

B.

1.

"At its essence, the American Rule requires that litigants 'bear the cost of their own legal representation' by prohibiting 'recovery of counsel fees by the prevailing party against the losing party.'" Boyle v. Huff, 257 N.J. 468, 479 n.1 (2024) (quoting Occhifinto v. Olivo Constr. Co., 221 N.J. 443, 449

14

(2015)).  New Jersey courts "have traditionally adhered to the American Rule as the principle that governs attorneys' fees."  Walker v. Giuffre, 209 N.J. 124, 127 (2012).  The American Rule underscores "New Jersey's strong public policy against shifting counsel fees."  Innes v. Marzano-Lesnevich, 224 N.J. 584, 592 (2016).

The American Rule, however, is not absolute.  Rule 4:42-9(a) provides that "[n]o fee for legal services shall be allowed in the taxed costs or otherwise," but identifies eight exceptions to that rule.  We have construed Rule 4:42-9(a) to generally codify "those specific instances where, in the absence of a separately enabling statute or contract, fee shifting is permitted." In re Est. of Folcher, 224 N.J. 496, 507 (2016) (quoting In re Est. of Vayda, 184 N.J. 115, 120 (2005)).  In addition, there are "a few Court-sanctioned 'exceptions to the American Rule that are not otherwise reflected in the text of Rule 4:42-9' and that are not provided for via statute, court rule, or contract" -- a category that "defies any one ready descriptor but involves fiduciary breaches in certain settings."  Ibid. (quoting Vayda, 184 N.J. at 121).

If no exception applies, New Jersey's general public policy against fee awards governs, and the American Rule precludes a fee award to a party. Innes, 224 N.J. at 592.

15

This appeal requires that we address two exceptions to the American Rule. The first is the exception for "all cases where attorney's fees are permitted by statute." R. 4:42-9(a)(8); see also Hansen, 253 N.J. at 212 (noting that the Legislature "has prescribed in certain settings the award of reasonable counsel fees to attorneys for prevailing parties"). The second is the exception prescribed by court rule that allows fee awards in specific probate actions, including guardianship proceedings in certain instances. R. 4:42-9(a)(3); R. 4:86-4(e). We consider each in turn.

2.

The APS Act was enacted to protect vulnerable adults from abuse, neglect, and exploitation. See generally N.J.S.A. 52:27D-406 to -426. It is "a legislative response to the risks and dangers of abuse, neglect and exploitation faced by our older, infirm and vulnerable citizens, as well as all other adults" with physical or mental disabilities. Farnkopf, 363 N.J. Super. at 385.

The Act requires a county adult protective services provider such as APS in this matter to "initiate a prompt and thorough evaluation" of any "report that a vulnerable adult is being or has been the subject of abuse, neglect or exploitation." N.J.S.A. 52:27D-410(b). If the county adult protective services provider determines "that there is reasonable cause to believe that the vulnerable adult has been the subject of abuse, neglect or exploitation," the

16

provider "shall determine the need for protective services." Id. at -411(a). A provider "may initiate appropriate legal action including, but not limited to, petitioning for guardianship or conservatorship." Id. at -416.

If the alleged incapacitated person is not represented by counsel, the court appoints counsel in the order scheduling a hearing. R. 4:86-4(a)(8). If "special circumstances come to the attention of the court by formal motion or otherwise," a temporary guardian, sometimes called a guardian ad litem, may also "be appointed to evaluate the best interests of the alleged incapacitated person and to present that evaluation to the court." Id. at (d); see also N.J.S.A. 3B:12-24.1(c) (addressing the determination of whether a temporary guardian should be appointed).

A court-appointed attorney and a temporary guardian fulfill "separate and discrete" roles. In re Mason, 305 N.J. Super. 120, 126 (Ch. Div. 1997). The attorney "acts as an 'advocate' for the interests of his client," serving as "an independent legal advocate for the alleged incompetent" and taking "an active part in the hearings and proceedings." Id. at 127; see also In re M.R., 135 N.J. 155, 173-75 (1994) (noting a court-appointed attorney's responsibility to serve as an independent legal advocate for an alleged incapacitated person). A temporary guardian, in contrast, "serves 'as "the eyes of the court" to further

17

the [client's] "best interests."'" S.T. v. 1515 Broad St., LLC, 241 N.J. 257, 278 (2020) (alteration in original) (quoting Mason, 305 N.J. Super. at 127).

Both of the statutes that govern the guardianship proceeding in this matter provide for fee awards against the estate of the alleged incapacitated person. The APS Act authorizes a court to "order payments to be made by or on behalf of the vulnerable adult for protective services from his own estate," N.J.S.A. 52:27D-418, and defines "[p]rotective services" to include "legal . . . services necessary to safeguard a vulnerable adult's rights and resources, and to protect a vulnerable adult from abuse, neglect or exploitation," id. at -407. The statute addressing temporary guardianships provides that a "temporary guardian, upon application to the court, shall be entitled to receive reasonable fees for his services, as well as reimbursement of his reasonable expenses, which shall be payable by the estate of the alleged incapacitated person or minor." N.J.S.A. 3B:12-24.1(c)(9).

Neither statute, however, authorizes an award of fees against an adult protective services provider such as APS. As the Appellate Division observed when it reversed a fee award against a provider in Farnkopf, N.J.S.A. 52:27D-418 "only permits the ordering of payments from the vulnerable adult's 'own estate,'" and "any authority to make such an award does not extend to compelling another litigant or any other person or party to bear such fees."

18

363 N.J. Super. at 403 (quoting N.J.S.A. 52:27D-418). The APS Act does not authorize a fee award against a person or entity other than the estate in a guardianship matter such as this one.[3]

N.J.S.A. 3B:12-24.1 is similarly limited; it provides for fee awards against the estate but is silent as to awards against any other person or entity.

Accordingly, we concur with the Appellate Division's conclusion that there is no statutory basis for an award of fees against APS in this matter. See A.D., 477 N.J. Super. at 299-300. The exception to the American Rule set forth in Rule 4:42-9(a)(8) is thus inapplicable to this appeal.

3.

We next consider whether Rule 4:42-9(a)(3) and Rule 4:86-4(e) warrant a fee award in the setting of this appeal.

Rule 4:42-9(a)(3) provides that "[i]n a guardianship action, the court may allow a fee in accordance with R. 4:86-4(e) to the attorney for the party

---

[3] Citing Farnkopf, 363 N.J. Super. at 403, the Appellate Division in this matter construed N.J.S.A. 52:27D-409(e) to authorize fee awards against an adult protective services provider if the provider's conduct or the conduct of its employees was outside the scope of their employment, or constituted a crime, actual fraud, actual malice, or willful misconduct. A.D., 477 N.J. Super. at 299-300. We disagree with that aspect of the Appellate Division's analysis. N.J.S.A. 52:27D-409(e) provides that APS and its employees are immune from civil liability "when acting in the performance of their official duties, unless their conduct is outside the scope of their employment, or constitutes a crime, actual fraud, actual malice, or willful misconduct." It does not expressly authorize an award of attorneys' fees in any circumstances.

seeking guardianship, counsel appointed to represent the alleged incapacitated person, and the guardian ad litem." Rule 4:86-4(e) states that "[t]he compensation of the attorney for the party seeking guardianship, appointed counsel, and of the guardian ad litem, if any, may be fixed by the court to be paid out of the estate of the alleged incapacitated person or in such other manner as the court shall direct."

Kossup and Lundquist cite the Appellate Division's decision in In re Guardianship of DiNoia, 464 N.J. Super. 562, 565-69 (App. Div. 2019). There, the appellate court affirmed an order requiring APS to pay the legal fees of court-appointed counsel because APS had "protracted the litigation" by failing to supply required information in a timely manner and the court-appointed attorney contributed "exceptional efforts" on his client's behalf. Id. at 567-69. In DiNoia, the appellate court cited no authority for its conclusion that an adult protective services provider's delay in litigation and commendable work by a court-appointed attorney warrant a fee award in a guardianship matter. Ibid.

Relying on Rule 4:86-4(e)'s closing phrase, "or in such other manner as the court shall direct," Kossup and Lundquist urge the Court to expand the holding of DiNoia, and generally authorize fee awards against adult protective services providers.

20

We decline to adopt the Appellate Division's holding in DiNoia, or to broaden that holding to generally authorize fee awards in settings such as this. The language of Rule 4:86-4(e), "or in such other manner as the court shall direct," does not create a new exception to the American Rule. The Legislature has not authorized fee awards in these cases against any entity but the alleged incapacitated person's estate. See N.J.S.A. 52:27D-418; N.J.S.A. 3B:12-24.1(c)(9). Indeed, the record indicates that APS does not have sufficient resources to pay the fees of court-appointed counsel and temporary guardians. The suggestion that this Court should order an increase in APS's funding ignores separation of powers principles. See N.J. Const. art. III, ¶ 1.

Accordingly, we do not construe Rule 4:42-9(a)(3) or Rule 4:86-4(e) to authorize fee awards against adult protective services providers under any circumstances, even if they have protracted the litigation. Instead, in matters in which the alleged incapacitated person's estate lacks the resources to pay fee awards, court-appointed attorneys and temporary guardians have traditionally represented their clients pro bono.

Kossup argues that in reliance on the order dated June 11, 2020, he reasonably anticipated that his fees would be paid. We have no doubt that the order's payment provision gave rise to confusion in this case. We caution trial judges handling guardianship matters that a lawyer asked to serve as counsel

21

or guardian for an alleged incapacitated person should be told that the court anticipates the lawyer will serve pro bono if the estate lacks sufficient resources to pay the lawyer's fees. We also remind judges handling these matters that it is the court, not the Surrogate, who appoints counsel, determines whether a temporary guardian should be appointed, and addresses the question of compensation in accordance with Rule 4:86-4.

Finally, we acknowledge that Lundquist paid the fees charged by the expert psychologist whom he retained, and that he was not reimbursed for that substantial disbursement. We suggest that before retaining experts in a guardianship matter, temporary guardians serving pro bono raise the question of expert fees with the court and opposing counsel and determine whether resources are available to defray all or part of those fees.

In sum, our statutes, court rules, and case law do not support fee awards against adult protective services providers in the setting of this appeal. We hold that the trial court properly exercised its discretion when it denied the fee applications and that the Appellate Division ruled correctly when it affirmed the trial court's determination.

4.

We recognize the critical role of pro bono service in guardianship matters in which a vulnerable person is indigent. "Volunteering one's time

22

and expertise to help people who need legal services that they cannot afford is in keeping with the finest traditions of the practice of law." In re Op. No. 17-2012, 220 N.J. 468, 484 (2014) (citing In re Guardianship of G.S., III, 137 N.J. 168, 175 (1994)). Indeed, our Rules of Professional Conduct impose on each lawyer "a professional responsibility to render public interest legal service." RPC 6.1.

In certain settings, pro bono service in guardianship matters entitles New Jersey attorneys to an exception to the court-appointed representation requirements of Madden v. Township of Delran, 126 N.J. 591, 605-11 (1992). Rule 1:21-12(a) provides that "[a]ttorneys who certify that they have performed at least twenty-five (25) hours of voluntary (as distinct from court-appointed) qualifying pro bono service in New Jersey in the year ending on December 31 before the certification date" are exempt from court-appointed pro bono service under Madden for the following year, subject to requirements set forth in the court rule.

In a March 1, 2021 order addressing guardianships, we directed that the Madden exemption be available to attorneys "appointed by the court . . . to serve in any of the following roles: (i) attorney for an alleged incapacitated person; (ii) [g]uardian [a]d [l]item in a guardianship matter; (iii) temporary pendente lite guardian . . . ; (iv) permanent guardian of an adjudicated

23

incapacitated person; or (v) special medical guardian," if they "provide at least 25 hours of pro bono legal representation in adult guardianship matters in the course of one year." The <u>Madden</u> credit for guardianship proceedings recognizes the invaluable pro bono service of many members of our bar in these sensitive matters.

We acknowledge that the <u>Madden</u> exemption was not available to Kossup and Lundquist when they accepted their appointments. We share their concern that pro bono service in guardianship matters can impose substantial burdens on lawyers, particularly those who maintain solo or small-firm practices. We urge judges to consider the fair allocation of those burdens when they ask lawyers to serve as court-appointed counsel or guardians.

Here, the diligent efforts of Kossup and Lundquist to secure the services needed by Hank were crucial to the guardianship proceeding's successful outcome. By virtue of their expertise and diligence, the work of professionals at APS and other organizations, and the trial court's guidance, Hank is able to maintain his independence in a supportive and safe environment. We thank these attorneys for their exemplary work on Hank's behalf.

IV.

The judgment of the Appellate Division is affirmed.

24

CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, FASCIALE, and NORIEGA join in this opinion. JUSTICE HOFFMAN did not participate.